UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**SEAN L. HARTFIELD**,

        Plaintiff,

  v.

**LEO BESNER, individually, WILLIE HALLIBURTON, SGT. PETER MAHUNA, CITY OF PORTLAND, a political subdivision of State of Oregon, and John Doe Supervisors #1-5**,

        Defendants.

Civil Case No. 3:11-CV-00100-KI

OPINION AND ORDER ON MONELL CLAIM

    Sean L. Hartfield
    Hartfield Law Offices PC
    6019 NE MLK Jr. Boulevard
    Portland, OR 97211

        Pro Se Plaintiff

Page 1 - OPINION AND ORDER ON MONELL CLAIM

      J. Scott Moede
      Senior Deputy City Attorney
      Office of City Attorney
      1221 SW Fourth Avenue, Rm. 430
      Portland, OR 97204

           Attorney for Defendants

           Plaintiff Sean L. Hartfield brings an action under 42 U.S.C. § 1983 and state law alleging defendants Leo Besner and the City of Portland ("City") violated his civil rights and acted in a tortious manner on August 22, 2010. Based on Hartfield's concessions, I previously dismissed Sergeant Halliburton and dismissed Hartfield's excessive force and battery claims. I indicated that, had Hartfield not conceded these claims, I would have ruled in favor of defendants on them. I also granted summary judgment to defendants on Hartfield's right to counsel and silence claim.

           With respect to Hartfield's Fourth Amendment claim, I found a question of fact existed as to whether confinement in a police car, or being transported to the precinct, changed a permissible *Terry* stop into an arrest and I denied defendants' motion for summary judgment on that issue. Similarly, I found a question of fact existed as to whether what Officer Besner knew was sufficient to constitute probable cause to arrest Hartfield for assault in the second degree, menacing or disorderly conduct in the second degree. Since Hartfield raised a material issue of fact about Sergeant Mahuna's personal participation in any Fourth Amendment violation, I declined to dismiss him. Nevertheless, I found Sergeant Mahuna and Officer Besner entitled to qualified immunity on Hartfield's Fourth Amendment claim. Finally, because Hartfield raised a question of fact about whether any arrest was lawful, his false imprisonment claim survived summary judgment; the claim is alleged against the City but involves only Officer Besner's

Page 2 - OPINION AND ORDER ON <u>MONELL</u> CLAIM

conduct.

Pending before me is the City's Motion to Dismiss Plaintiff's Monell Claim, or in the Alternative, Motion for Summary Judgment on the Monell Claim. That claim had previously been bifurcated. For the following reasons, I grant the motion.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff fails to allege the "grounds" of his "entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation omitted). This means that, although a plaintiff need not allege detailed facts, the pleading must provide "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A claim rises above the speculative level "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 929 (9th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949)).

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Hartfield makes the following allegations in his Monell claim:

61.

The City of Portland had an unofficial custom, policy or practice of endorsing and authorizing unconstitutional arrests, unlawful use of force by officers including Besner.

Hartfield then proceeds to allege six separate incidents which Hartfield alleges the City knew about "regarding Defendant Besner and his propensity for violence and excessive force and unconstitutional behavior while acting in his capacity as a police office." First Am. Compl. ¶ 62. The six incidents alleged involve the following conduct: Officer Besner punched a man in the head (1998); he "used excessive force against individuals protesting the war" (judgment in 2004); he "maliciously grabbed and twisted" a 15 year old's arm (judgment in 2005); he "wrongfully shot" a man in the back (judgment in 2005); he "wrongfully and maliciously tasered and shocked" a woman at least three times then dragged her downstairs (judgment in 2008); and he "wrongfully pointed [a] loaded weapon[] at plaintiffs at close range, then *illegally detained* them" and pulled one plaintiff out of his car by the hair and punched him in the groin (jury verdict in 2009). Id. at ¶ 62(a)-(f) (emphasis added).

Hartfield alleges the "unconstitutional force and arrest" was consistent with "prior wrongful and unlawful conduct" of Officer Besner, and that the City knew about the prior conduct, ratified it, and "*failed to take* effective action to prevent" Officer Besner "from

continuing to engage in the use of excessive force, abuse of his authority, and similar wrongful and unlawful misconduct." Id. at ¶ 63 (emphasis added).  Additionally, he alleges the City "authorized, ratified and/or tolerated" Officer Besner's "wrongful and unlawful conduct" as follows:

> a) By *failing* to properly discipline Defendant Besner for prior wrongful and/or unlawful conduct, particularly where he was known to be hostile and unduly violent in his interactions with people in the community.
>
> b) By *failing* to take adequate precautions such as testing Defendant Besner's knowledge of the law and or [sic] his knowledge of the Portland Police Bureau's Manual of Policy and Procedures; and
>
> c) [dismissed claim regarding handcuffs and access to a toilet].

Id. at ¶ 64 (emphasis added).

Finally,

> 65.
>
> As a result of the unconstitutional policy, custom or practice which was promoted, allowed or facilitated within the Portland Police Bureau[,] officers are allowed to engage in coercive arrest, unlawful detentions and arrest, unlawful force and actions similar to what was displayed by Besner and the other officers involved in the arrest and investigation of Plaintiff.
>
> 66.
>
> As a result of the unconstitutional policy, custom and practice alleged herein Plaintiff was unconstitutionally arrest[ed], detained, handcuffed, forced to jail and held without justification and unlawfully.

I.    Excessive Force

The City argues that because Hartfield's Monell claim focuses on Officer Besner's alleged use of excessive force, and because Hartfield conceded his excessive force claim, the claim should be dismissed.  I agree, but I dismiss the Monell claim only to the extent it alleges a

Page 5 - OPINION AND ORDER ON MONELL CLAIM

City-wide policy resulting in excessive force by officers. See City of L.A. v. Heller, 475 U.S. 796, 799 (1986) (City not liable under § 1983 where individual officer did not inflict constitutional injury).

Reading the allegations in Hartfield's complaint fairly, he also alleges an unconstitutional policy or practice, or City omissions, resulting in his alleged unconstitutional arrest. Accordingly, I deal with that portion of his Monell claim next.

II.     Arrest

The City argues Hartfield's allegations are insufficient to state a Monell claim and, alternatively, that it is entitled to judgment because Hartfield cannot establish liability against the City.

In Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690 (1978), the Court held the word "person" in § 1983 includes municipalities and other local governing bodies. A plaintiff may establish local governmental liability by demonstrating that: (1) a governmental employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity;" (2) the individual who committed the constitutional tort was an official with "'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal citations omitted). A municipality's failure to protect constitutional rights may also result in liability, but only if the following four conditions are met: "(1) that [the plaintiff] possessed a constitutional right of

which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (internal quotation marks omitted).

The City argues Hartfield fails to state a claim. Specifically, Hartfield does not allege the City violated his rights or directed its employees to do so. To the extent his theory is that the City failed to act, the City asserts the allegations in the First Amended Complaint are insufficient. The City argues Hartfield has failed to allege any specific custom, policy, or practice that would authorize an unlawful arrest, has failed to allege any policy or practice that was the "moving force" behind the alleged constitutional violation, and has failed to allege that the City acted with deliberate indifference.

Assuming without deciding that Hartfield properly alleges a Monell claim, given how far down the litigation path this case has traveled, I conclude Hartfield has failed to raise an issue of material fact sufficient to overcome the City's motion for summary judgment, as I discuss below.

A.  Failure to Train

Hartfield alleges the City "authorized, ratified and/or tolerated Defendant Besner's wrongful and unlawful conduct . . . [b]y failing to take adequate precautions such as testing Defendant Besner's knowledge of the law and/or his knowledge of the Portland Police Bureau's Manual of Policy and Procedures[.]" First Am. Compl. ¶ 64(b).

An inadequate training claim may serve as the basis of municipal liability only after a three-part test has been met. Merritt v. Cnty. of L.A., 875 F.2d 765, 770 (9th Cir. 1989); City of Canton v. Harris, 489 U.S. 378, 387-391 (1989). First, the existing training program must be

Page 7 - OPINION AND ORDER ON MONELL CLAIM

inadequate. "A training program will be deemed adequate if it 'enable[s] officers to respond properly to the usual and recurring situations with which they must deal.'" Merritt, 875 F.2d at 770 (quoting Canton, 489 U.S. at 388). If the training program is inadequate it may constitute a city policy, but only if the City's failure to train its employees evidences a "deliberate indifference" to the rights of individuals with whom the officers come in contact. Id. (citing Canton, 489 U.S. at 387). To prove deliberate indifference, plaintiff must show that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. (citing Canton, 489 U.S. at 391). Finally, the inadequate training must be shown to have "actually caused" the constitutional deprivation. Id. (citing Canton, 489 U.S. at 391).

The City has submitted evidence of Officer Besner's training on the subjects of reasonable suspicion, probable cause and arrests, and his training on community policing and preliminary investigations, among other subjects. The City also provides annual updates on these subjects at in-service trainings.

Hartfield falls back on Officer Besner's actions, specifically the officer's alleged failure to properly investigate the incident. However, even assuming Officer Besner's actions constitute evidence of improper training, "evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy." Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007).

When the City provides evidence of Officer Besner's training on the relevant subjects, and when Hartfield neither questions this training nor offers evidence of other police officers

engaging in similar allegedly questionable conduct, I cannot find that there is a material issue of fact as to whether the City "can reasonably be said to have been deliberately indifferent to the need for more training." Merritt, 875 F.2d at 770. Furthermore, even assuming Officer Besner arrested Hartfield without probable cause, that incident alone is not proof of inadequate training. Indeed, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." Canton, 489 U.S. at 391.

      B.      <u>Remaining Allegations</u>

Hartfield asserts, however, that his Monell claim is not limited to a failure to train. Hartfield argues Sergeant Mahuna's failure to write a report should lead to City liability either because the City had a policy of allowing the sergeant to avoid the obligation of writing a report or because the City failed to enforce the policy; no allegations in his First Amended Complaint even remotely touch on this subject. The only policy Hartfield points to reads: "Members taking any official police action, on or off duty, will write an appropriate report to cover the incident except in cases resolved with a coded disposition." Ex. 9, at 2. The report is required to be written either at the end of the shift or within four hours after the incident. In addition, Hartfield includes a policy controlling the contents of officers' duty notebooks. There is no evidence, however, that Sergeant Mahuna's failure to write a report (either because the City allowed him to avoid the obligation or failed to enforce its policy) had anything to do with Hartfield being placed in the back of a patrol car and being taken to the precinct, possibly without probable cause. In short, there is no evidence any failure on the City's part caused Hartfield's injury.

Hartfield also argues that the City had a "policy of allowing one officer (Officer Besner)

Page 9 - OPINION AND ORDER ON <u>MONELL</u> CLAIM

to rely on another's statement (Sgt. Mahuna) about what yet another officer (Officer Pryce) learned in the course of an interview with a witness (McKay), particularly given the likelihood of [human] error, misinterpretation, mishearing, misunderstandings, moments of inattention or distraction, and so on accumulating with each new exchange of information." Resp. 11-12. Hartfield argues that, absent such a policy, Officer Besner "would likely" have spoken directly with McKay and another percipient witness "likely" would have been interviewed at the scene, rather than much later. Id. at 12. Hartfield fails to point to a City policy, to any evidence that his injury was caused by deliberate indifference of the City, or to any evidence suggesting that his injury as a result of this alleged conduct was something more than an isolated incident. Rather, his allegations suggest negligence in the way the officers conducted the investigation.

As to the allegations actually present in his First Amended Complaint, Hartfield offers no evidence or argument supporting his allegation that the City had an "unofficial custom, policy or practice of endorsing and authorizing unconstitutional arrests[.]" First Am. Compl. ¶ 61.

With respect to the City's alleged failure to "take effective action to prevent Defendant Besner from continuing to engage in . . . abuse of his authority, and similar wrongful and unlawful misconduct," he relies on the six incidents relayed in his First Amended Complaint. Id. at ¶¶ 63, 62(a)-(f). He offers no evidence or details of the alleged incidents, and only one of the six appears to have involved an illegal detainment. The illegal detainment occurred in October 2009, almost a year before the incident involving Hartfield. Hartfield provides no evidence about whether anyone requested or required an internal investigation related to that incident, no evidence that the Portland Police Bureau conducted an inadequate investigation, and no evidence regarding any decision on discipline. Furthermore, the City's promotion of Officer Besner to

Page 10 - OPINION AND ORDER ON MONELL CLAIM

sergeant in December 2010, two months after Hartfield notified the City about his claims, is insufficient to show the City ratified Officer Besner's actions toward Hartfield without further details surrounding the City's decision. This same reasoning also goes to Hartfield's allegations that the City "authorized, ratified and/or tolerated Defendant Besner's wrongful and unlawful conduct" and that the City "fail[ed] to properly discipline [him] for prior wrongful and/or unlawful conduct[.]" First Am. Compl. ¶ 64(a).

Finally, Hartfield's allegation that the City had a "policy which allowed, encouraged or required Defendant Besner to leave detainees handcuffed in cells without access to a toilet regardless of any threat level to the detainees or officers" may not be the basis for a Monell claim as Hartfield conceded his claim for improper handcuffing and use of a toilet. Id. at ¶ 64(c).

## CONCLUSION

For the foregoing reasons, the City's Motion to Dismiss Plaintiff's Monell Claim, or in the Alternative, Motion for Summary Judgment on the Monell Claim [71] is granted and Hartfield's fifth claim for relief is dismissed with prejudice.

IT IS SO ORDERED.

DATED this    15th    day of October, 2012.

       /s/ Garr M. King
       Garr M. King
       United States District Judge